# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| AQUALEGACY DEVELOPMENT LLC,<br><br>Appellant,<br><br>v.<br><br>2012 CANROW OWNER, LLC,<br><br>Appellee. | Case No. 16-cv-05953-BLF<br><br>**ORDER REVERSING DECISION OF BANKRUPTCY COURT; REMANDING ACTION**<br><br>[Re: ECF 19] |

Appellant AquaLegacy Development LLC ("AquaLegacy") appeals an order of the United States Bankruptcy Court for the Northern District of California granting summary judgment for Appellees 2012 Canrow Owner, LLC ("Canrow") and Medallion Servicing, LLC ("Medallion") (collectively, "Appellees"), and entering judgment for Appellees on AquaLegacy's breach of contract and specific performance causes of action in this Adversary Proceeding to a previously dismissed Chapter 11 Proceeding. *See* Appellant's Opening Br. ("Opening Br."), ECF 19.

For the reasons discussed below, the Court REVERSES the Bankruptcy Court's order and REMANDS the action to the Bankruptcy Court for further proceedings consistent with this order.

## I. BACKGROUND

In 1999, AquaLegacy's predecessor in interest, Cannery Row Marketplace, LLC ("CRM") obtained a loan from Carl B. Miller, dba Geneva Real Estate Investments (the "Geneva Loan"). Appellant's App. ("AA") 422, ECF 19-1. CRM executed a promissory note, which was secured by a first deed of trust against the Property the "Geneva Note" and the "Geneva Deed of Trust"). The amount of the note was increased over time, and Miller sold fractionalized interests in the note to various investors. *Id.* at 422–23.

In October 2009, Miller assigned the Geneva Loan servicing agreement to Medallion. *Id.* at 423. Three years later, in July 2012, Medallion formed Canrow to consolidate all of these

fractional interests. *Id.* Individual investors traded their individual interests under these fractional deeds for Canrow membership interests.

AquaLegacy acquired title to the property on July 12, 2013, subject to the deed of trust that was held by Canrow. *Id.* at 425. AquaLegacy, the debtor, fell behind on the payments and filed for Chapter 11 bankruptcy on January 26, 2014, in an effort to stall foreclosure on the property.

During the underlying chapter 11 case, the parties entered into a Stipulation for Relief from Stay, Adequate Protection, and Use of Cash Collateral ("Stipulation"), which was approved by the Bankruptcy Court in an oral ruling on May 29, 2014. AA 113–17 ("Stipulation"). The Stipulation provide for, in pertinent parts: (1) a payoff amount from AquaLegacy to Canrow by September 1, 2014, which could be extended to September 30, 2014, upon payment by AquaLegacy of $50,000 by September 1, 2014, Stipulation ¶ 1; (2) if AquaLegacy did not pay the payoff amount by the applicable deadline, Canrow would be entitled to relief from the automatic stay, *id.* ¶ 5; and (3) Canrow would provide "reasonable and customary documentation necessary to effect the closing of any transaction to allow the Debtor to pay the payoff amount." *Id.* ¶ 2.

AquaLegacy did not pay the payoff amount by the deadline and Appellees foreclosed on the real property at issue in November 2014, contending that they had the right to do so under the Stipulation for relief from the stay. On June 29, 2015, AquaLegacy commenced this adversary proceeding by filing a complaint against Appellees for breach of contract, alleging that Appellees breached the Stipulation by failing to provide "reasonable and customary documentation" regarding the chain of title to permit AquaLegacy to obtain refinancing. AA 235. Because of the alleged breach of the Stipulation, AquaLegacy requested declaratory relief that (1) Appellees were not entitled to relief from the stay because they did not comply with the terms of the Stipulation; (2) the foreclosure sale was in violation of the automatic stay and was therefore void; (3) the Stipulation remained valid and enforceable for AquaLegacy to tender the payoff amount; and (4) there are no other claims on the lien against the property. *Id.* at 236.

Appellees subsequently filed a motion to dismiss, which the Bankruptcy Court granted with leave to amend. On October 6, 2015, AquaLegacy filed an amended complaint, adding a new claim for promissory estoppel. AA 26–41 ("FAC"). Before the Bankruptcy Court could hear

argument on Appellees' second motion to dismiss, the Bankruptcy Court dismissed the underlying chapter 11 case. *Id.* at 190. Thereafter, on November 24, 2015, the Bankruptcy Court denied Appellees' motion to dismiss as to the breach of contract claim, but granted the motion with prejudice as to the promissory estoppel claim. *Id.* at 180–88 (transcript of hearing on motion to dismiss FAC). Because the underlying chapter 11 case had been dismissed, the Bankruptcy Court raised the issue of whether it should abstain and dismiss this proceeding. *Id.* at 188–89. On December 24, 2015, the Bankruptcy Court ruled that it would retain jurisdiction "to decide whether the automatic stay was terminated under the terms of the Stipulation, whether the automatic stay was violated, and if so, the consequences that flow from such violation." AA 240. The Bankruptcy Court also stated that it would "not decide any alleged improprieties with the foreclosure process and will not resolve any disputes regarding liens and title to real property, for lack of jurisdiction or alternatively, discretionary abstention." *Id.*

The pleadings were settled on February 16, 2016, when Appellees filed an answer to AquaLegacy's First Amended Complaint. *Id.* at 243–49. Six months later, on September 20, 2016, the Bankruptcy Court heard arguments on Appellees' motion for summary judgment and entered judgment in favor of Appellees. *See Id.* at 902–27 (transcript of the hearing); *id.* 931–32 (order granting motion for summary judgment). AquaLegacy then filed the instant appeal.

## II. DISCUSSION

AquaLegacy alleges that the Bankruptcy Court erred by: (1) granting summary judgment in favor of Appellees; (2) denying its motion for a continuance of the motion for summary judgment; (3) exceeding the scope of its jurisdiction in rendering a final order that adjudicated state law contract issues; and (4) issuing an order that exceeds the scope of the pleadings. Although AquaLegacy raises several issues in this appeal, the Court's resolution of the issues addressed in this order—whether the Bankruptcy Court exceeded the scope of its jurisdiction and abused its discretion in denying AquaLegacy's motion for a continuance of the motion for summary judgment—renders it unnecessary to consider the other issues raised. The Court addresses both issues below, in turn.

## A. The Bankruptcy Court's Jurisdiction

AquaLegacy contends that the Bankruptcy Court exceeded its jurisdiction by adjudicating state law issues, such as the propriety of the alleged foreclosure sale. Opening Br. 41. Although Appellees do not respond to this argument in their opposition, the Court nonetheless disagrees with AquaLegacy and concludes that the Bankruptcy Court had jurisdiction to interpret the Stipulation.

### i. Legal Standard

Bankruptcy court jurisdiction is statutorily based. Under 28 U.S.C. § 1334(a), federal district courts have "original and exclusive jurisdiction" over all title 11 cases (*i.e.*, the bankruptcy case itself). Under 28 U.S.C. § 1334(b), district courts have "original but not exclusive jurisdiction" over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."

The terms "arising under title 11" and "arising in a case under title 11" are terms of art which the courts have defined. *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1285 (9th Cir. 2013). A proceeding "arises under" title 11 if it presents claims for relief created or controlled by title 11. *Id.* In contrast, the claims for relief in a proceeding "arising in" a title 11 case are not explicitly created or controlled by title 11, but such claims nonetheless would have no existence outside of a bankruptcy case. *Id.* Actions "arising under" title 11 and "arising in" a case under title 11 are considered "core proceedings." *Id.* at 1053. The remaining category of bankruptcy jurisdiction, "related to" jurisdiction, is an exceptionally broad category encompassing virtually any matter either directly or indirectly related to the bankruptcy case. *Id.* at 1287. Congress specified that bankruptcy judges could render final, appealable rulings in core bankruptcy proceedings. 28 U.S.C. § 157(b)(1); *In re Marshall*, 600 F.3d at 1053–54. Congress further specified that bankruptcy judges could render final, appealable rulings in noncore proceedings, but only with the parties' consent. *Id.* (citing 28 U.S.C. § 157(c)).

One exception to these jurisdictional rules is "ancillary jurisdiction," which "may rest on one of two bases: (1) to permit disposition by a single court of factually interdependent claims,

4

and (2) to enable a court to vindicate its authority and effectuate its decrees." *Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.)*, 439 F.3d 545, 549 (9th Cir. 2006) (citing citation and internal quotation marks omitted). The Ninth Circuit has explained that "a bankruptcy court has subject matter jurisdiction to interpret orders entered prior to dismissal of the underlying bankruptcy case, 'and to dispose of ancillary matters such as an application for an award of attorney's fees for services rendered in connection with the underlying action,'" but does not have jurisdiction to "grant new relief independent of its prior rulings once the underlying action has been dismissed." *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1135 (9th Cir. 2010) (internal citations omitted).

### ii. Analysis

In its summary judgment order, the Bankruptcy Court ordered that

> judgment be entered providing that [Appellees] did not violate the automatic stay under Section 362(k) of Title 11 and that their exercise of foreclosure rights pursuant to State law was permissible without further order of this Court under the terms of the Stipulation entered into by the parties and approved by the Court on or about May 29, 2014.

AA 932. AquaLegacy contends that this ruling conflicts with the Bankruptcy Court's previous Abstention Order, in which it ruled that it would retain jurisdiction "to decide whether the automatic stay was terminated under the terms of the Stipulation, whether the automatic stay was violated, and if so, the consequences that flow from such violation," and that it would "not decide any alleged improprieties with the foreclosure process and will not resolve any disputes regarding liens and title to real property, for lack of jurisdiction or alternatively, discretionary abstention." *Id.* at 240; Opening Br. 38–39. Specifically, AquaLegacy argues that the Bankruptcy Court expanded its jurisdiction post-abstention without notice and improperly adjudicated the state law issues that serve as conditions precedent to determining whether the Foreclosure Sale violated the automatic stay. Opening Br. 39. Appellees do not address this issue in their opposition.

Notably, AquaLegacy does not contend that absent the Bankruptcy Court's Abstention Order, the Bankruptcy Court would not have had jurisdiction to decide the state law issues. *See* Reply Br. 9, ECF 24. Thus, the issue is not whether the Bankruptcy Court had jurisdiction to

decide whether Appellees violated the automatic stay, but whether the Bankruptcy Court exceeded the scope of its retained jurisdiction. *Id.* A review of the Abstention Order demonstrates that the Bankruptcy Court's decision on summary judgment was properly within its jurisdiction.

In its Abstention Order, the Bankruptcy Court explained: "Debtor also made factual allegations in the First Amended Complaint that Debtor was not notified of the foreclosure and that the foreclosure did not satisfy the notice requirements under applicable state law. The court declines to retain ancillary jurisdiction to resolve these claims." AA 239. The Bankruptcy Court distinguished these issues from those that "fall under the court's authority to effectuate its orders," such as the automatic stay. *See id.* The Bankruptcy Court also made clear that determining whether Appellees had violated the automatic stay would require the court to interpret the Stipulation, and as such, was factually interdependent to the Bankruptcy Court's determination regarding the automatic stay. *Id.*

In light of the Bankruptcy Court's Abstention Order, it is clear to this Court that AquaLegacy should have anticipated that the Bankruptcy Court would interpret the meaning of the Stipulation in determining whether Appellees violated the automatic stay. And, the order itself does no more than that. The Bankruptcy Court did not rule on the propriety of the foreclosure more generally, but only that the Stipulation allowed Appellees to foreclose on the property because it found that AquaLegacy had breached the Stipulation. Accordingly, the Court cannot agree that the Bankruptcy Court exceeded the scope of its retained jurisdiction when it interpreted the contract.

**B.     Denial of AquaLegacy's Motion for a Continuance**

AquaLegacy next argues that it complied with the requirements of Rule 56(d), and thus, the Bankruptcy Court abused its discretion by denying the request. Opening Br. 35. Appellees do not address this issue in their opposition. The Court agrees that the Bankruptcy Court abused its discretion in denying AquaLegacy's motion for a continuance.

**i.     Legal Standard**

Rule 56(d), made applicable to adversary proceedings through Fed. R. Bankr. P. 7056, states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot

6

present facts essential to justify its opposition [to a motion for summary judgment], the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). It thus "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).

Pursuant to Rule 56(d), a court "should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998) (citing *McCormick v. Fund Am. Cos., Inc.*, 26 F.3d 869, 885 (9th Cir. 1994)). Rule 56(d) requests should be granted freely where a party has not had a "realistic opportunity" to pursue discovery relating to its theory of the case. *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (citations omitted); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("Although Rule 56[(d)] facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'" (citation omitted)). "[T]he denial of a Rule 56[(d)] application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986). The party making a Rule 56(d) request must be able to show that it diligently pursued its previous discovery opportunities and show "how allowing additional discovery would have precluded summary judgment." *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994).

A district court reviews a bankruptcy court's denial of a Rule 56(d) request for abuse of discretion. *Slatkin v. Neilson (In re Slatkin)*, 310 B.R. 740, 751 (C.D. Cal. 2004); *see also Burlington*, 323 F.3d at 773. Generally speaking, in reviewing for abuse of discretion, the Ninth

7

Circuit's test is to first determine whether the bankruptcy court identified the correct legal standard, then "determine whether its application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *In re Taylor*, 599 F.3d 880, 887 (9th Cir. 2010) (internal quotation marks and citation omitted). "If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion." *Id.* at 887–88 (citation omitted).

### ii. Analysis

In opposition to Appellees' motion for summary judgment, AquaLegacy asked the Bankruptcy Court to deny or continue the motion to allow for discovery pursuant to Fed. R. Civ. P. 56(d), and submitted a declaration of counsel in support thereof.[1] AA 395; *id.* at 764–66 ("Pessagno Decl. ISO Opp'n to Mot. Summ. J."). In its opposition, AquaLegacy stated that it had not been able to engage in discovery due to the health of its main principles, Messrs. Taylor and Brown, and submitted their medical records as proof. *Id.* at 395; Pessagno Decl. ISO Opp'n to Mot. Summ. J. ¶ 2; ECF 13-5 ("Medical Records"). AquaLegacy cited to several facts set forth in paragraphs 150–81 of its verified complaint in a then-pending state action that it maintained were "essential to resist the summary judgment motion." AA 395; Pessagno Decl. ISO Opp'n to Mot. Summ. J. ¶ 2; *see also* AA 422–30 (Verified Complaint to Quiet Title to Real Property; and for Declaratory Relief ¶¶ 150–81). Appellees did not oppose this request, except to contend that counsel for AquaLegacy had been participating in other litigation pending in state court. *See* AA 838–50; 909. The Bankruptcy Court denied AquaLegacy's request, stating:

> . . . . I think I have the facts necessary to decide this case. This is a question of contract interpretation. I've reviewed the contract and found that it is unambiguous. I've also reviewed the declaration that were filed by [both parties], and to the extent that they bear out anything, they bear out my conclusion that the agreement is not ambiguous.

---

[1] Although AquaLegacy referred to Rule 56(f), the Bankruptcy Court understood it to be referring to Rule 56(d), which was Rule 56(f) until the 2010 Amendments to the Federal Rules of Civil Procedure. *See* AA 925.

8

> There are no facts that would help me make the legal decision about whether this was ambiguous and what the contract means. So for that reason, I would deny their request for a continuance.

AA 925–26.

As a preliminary matter, the Bankruptcy Court did not identify the legal standard upon which it based its decision. Therefore, the Court cannot determine whether the Bankruptcy Court applied the correct standard in denying AquaLegacy's motion for a continuance. Nevertheless, the Court concludes that the Bankruptcy Court abused its discretion by denying AquaLegacy's motion for a continuance for the reasons discussed below.

First, although AquaLegacy did not file a separate motion, it nonetheless adequately complied with the requirements of Rule 56(d). AquaLegacy expressly invoked Rule 56(d) in its memorandum in opposition to summary judgment and attached a sworn declaration from counsel explaining the need for additional time and setting forth particular facts expected to be obtained through discovery that would demonstrate genuine issues of material fact with respect to all claims. That is, AquaLegacy demonstrated that the additional discovery would have precluded summary judgment, specifically, that Appellees negotiated the Stipulation with the express knowledge that AquaLegacy needed sufficient documentation to show good title to the Geneva Note and Geneva Deed of Trust as a condition to AquaLegacy's ability to perform and that Appellees assured AquaLegacy that such documentation would be timely provided before AquaLegacy's obligation to perform under the Stipulation arose. *See* AA 422–30 (Verified Complaint to Quiet Title to Real Property; and for Declaratory Relief ¶¶ 150–81). AquaLegacy substantiated that such evidence would exist in its verified complaint, which was submitted under penalty of perjury. Thus, the Bankruptcy Court's denial of AquaLegacy's motion was an abuse of discretion. *See Pride v. Correa*, 533 Fed. Appx. 745, 748 (9th Cir. 2013) (finding that the district court abused its discretion in denying plaintiff's motion for a continuance to conduct discovery where he demonstrated that additional discovery would have precluded summary judgment); *see also VISA Int'l Serv.*, 784 F.2d at 1475 (stating that denial is disfavored when a plaintiff specifically identifies relevant information and point to "some basis" for its existence).

Moreover, there is no indication that AquaLegacy did not "diligently pursue[ ]" discovery.

9

*See Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002). In fact, the evidence is to the contrary—the two principles of AquaLegacy, Messrs. Brown and Taylor, were incapacitated with life threatening illnesses and were thus unable to be deposed or to advise their counsel as to how they should prosecute the case in the several months leading up to the summary judgment motion. *See* Medical Records. These facts demonstrate compelling circumstances, under which the Bankruptcy Court should have granted AquaLegacy's Rule 56(d) motion.[2]

In finding that the Bankruptcy Court abused its discretion in denying AquaLegacy's request for a continuance, the Court notes that California law requires courts to consider extrinsic evidence when determining if a contract is ambiguous. Opening Br. 25; *see also Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2004) ("[I]t is reversible error for a trial court to refuse to consider [ ] extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous on its face."). In contravention of this requirement, the Bankruptcy Court reviewed the Stipulation by itself and confined its ruling to the limited evidence AquaLegacy could provide without the benefit of discovery, but nonetheless did not afford AquaLegacy the opportunity to conduct discovery to locate evidence contradicting Appellees' version of the facts.

Based on the foregoing, the Court finds that the Bankruptcy Court abused its discretion in denying AquaLegacy's Rule 56(d) motion.

### III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the bankruptcy court's denial of Appellant's request pursuant to Fed. R. Civ. P. 56(d) is REVERSED. This case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.

Dated: May 12, 2017

BETH LABSON FREEMAN
United States District Judge

---

[2] The Court does not suggest that compelling circumstances are necessary to warrant a continuance, but rather that they are sufficient.

10